FRANKLIN A. WILEY, Ex'r., &c., *v.* JOHN H. WILEY and others.

1. A bill by an executor, praying for leave to sell land in order to pay debts, will not be entertained unless it alleges distinctly that the personalty has been exhausted.

2. Where an executor made sales of personal property in November 1861, and April 1862, on six months' credit, for Confederate currency, and received the proceeds when due, *Held* that *prima facie* he was guilty of laches in not disposing thereof in paying debts, or (failing in that) in not investing it some other way—but keeping it to become worthless in his hands.

[See *Wiley* v. *Wiley*, Phil. 131.]

BILL to convert real estate into assets to pay debts, filed to Fall Term 1867 of the Court of Equity for CASWELL, and at Spring Term 1868, set down for argument upon demurrer, and transferred to this Court.

The bill alleged that one Alexander Wiley died in Caswell county in 1861, leaving a will by which he disposed of a large amount of real and personal estate, and appointed the plaintiff, Franklin A. Wiley executor, giving him power to sell, for the purpose of paying debts, such parts of the realty or personalty as he might choose; that the said Franklin qualified as executor, and made sale, in November 1861, of personal property to the amount of $1,019.46; and again, in April 1862, of other

personal property to the amount of $905.88; both amounts being payable in Confederate money; that the whole was paid in such money excepting about $197.25, which is yet unpaid; that with the money, he paid off debts amounting to $863.92, leaving still remaining in his hands in Confederate money, $935.77; that Confederate currency was, at the time when he received payment of the sale-notes, the only currency in the country, and he expected upon receiving it to be able to pay it away for debts due by his testator; that one of the creditors of the estate, holding a claim, now of about $675, refused to receive such currency and it remains unpaid, although the said Franklin has frequently tendered the currency to him; that the testator bequeathed considerable personal property to his widow, which was not included in the sales made as above; that there is now no personal property applicable to the payment of debts, and that by accidents beyond the control of the petitioner, he has been prevented from paying them as he had designed; that a certain tract of the testator's land (describing it) may conveniently be sold, &c. The prayer was for leave to sell said tract, and for further relief.

The devisees were made parties, and put in a general demurrer.

No counsel for the plaintiffs.

*Phillips & Battle, contra.*

READE, J. The scope of the bill is to have a decree to enable the plaintiff, as executor, to sell the real estate to pay debts, the personal estate being, as is suggested, exhausted.

There are several reasons why the plaintiff should not have the relief which he seeks.

1. It is not alleged in the bill that the personal estate is exhausted. The allegation is, that he made "two sales of perishable property; such as was not embraced in the bequests to the widow." There was considerable personal property bequeathed to the widow, which was subject to sale to pay debts, and the executor admits that he has never sold it. So

far as it appears to the Court, therefore, there is enough personal property to pay the debts, and no reason is given .why the land should be substituted for the personal property. Indeed the bill is not framed upon that idea, but upon the idea that the personal property is exhausted, or, that it need not be exhausted to enable the plaintiff to sell the land.

2. The will was proved and the plaintiff qualified as executor, in October 1861. It was his duty to convert the personal property into assets to pay debts as soon, as he could. He had a sale in November 1861, on six months' credit, the amount of which was $1,019, and another sale in April 1862, the amount of which was $905. The amount of both sales was $1,924. With the proceeds of sales he paid off debts to the amount of $863, leaving in his hands $1,061. There was but one debt outstanding against the estate, and the amount of that was about $500. Now why did he not pay off a debt of $500, when he had assets to the amount of $1,061 ? The reason which he assigns is, that the sale notes were paid in Confederate money, and that the creditor would not take it,. He does not say *when* he tendered it, and we suppose he must have been dilatory, because in May 1862, Confederate money was but little more below par than United States Treasury notes are now, and it is not to be supposed that a creditor would have refused it at that time. He gives no reason why the whole property was not sold at once; if there was no good reason, then he is to be held responsible, as if he had sold all at once. But even when the notes of the second sale fell due, in October 1862, Confederate money was not so far depreciated as not to be usually received in payment of debts. And in May 1862, $1,061 of Confederate money would have sold in the market for more than enough gold to pay the debt, and even in October 1862, it would have sold for nearly, if not quite enough. And yet the executor laid the money away, and, as he says, has it now on hand worthless. This was gross negligence, and the executor is chargeable with the value of the Confederate money, at the time when he received it. And that, if not of itself enough to pay off the only outstanding

debt, would have been more than sufficient, we are to conclude,. if added to the value of personal property left to the widow and unsold.  An executor will not be allowed to sell land to pay debts, when it appears  that he has, or by reasonable diligence  might have had, sufficient assets out of the personal property.  The demurrer is allowed.  Bill dismissed with. costs.

Per Curiam.                        ¦Decree accordingly.